IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| CARLOS WESLEY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  06 C 1499 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

After his first trial resulted in a hung jury, Carlos Wesley ("petitioner") was convicted at his second jury trial of three counts of bank robbery and sentenced to fifty-seven months imprisonment. On March 16, 2006, after the Seventh Circuit affirmed his conviction and sentence, petitioner filed a pro se petition to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. For the reasons stated below, the court denies the petition.

## FACTS[1]

On November 29, 1999, a man approached the TCF bank counter inside a Jewel Osco grocery store in Olympia Fields, Illinois. He showed Jeanette Butler, the bank teller, a handwritten note that read, "This is a fucking stick-up." Butler responded, "You've got to be kidding me," to which the man replied, "I'm not." Butler handed the man approximately $950 in cash, which contained a dye pack, a security device used by banks that explodes at a certain

---

[1] A fuller recitation of the facts of this case can be found in the Seventh Circuit opinion affirming petitioner's conviction. United States v. Wesley, 422 F.3d 509 (7th Cir. 2005).

distance from the bank, staining the skin and stolen money with red ink. After the man left the store, Butler activated the security alarm and informed her manager of the robbery.

On May 17, 2000, Butler was again working as a teller at the TCF bank counter when she recognized the man from the November robbery in line. Butler attempted to warn Janice DeBose, the other teller on duty, but DeBose did not understand Butler's warning. When the man reached DeBose at the counter, he showed her a checkbook with a blue or black cover with a handwritten note inside that read, "This is a fucking stick-up." DeBose gave the man the money in her cash drawer, which also contained a dye pack. After he left, DeBose told her supervisor and called the police.

On September 27, 2000, a man approached bank teller Theresa Hicks at the same TCF counter with a note inside a checkbook that read, "This is a stick-up. Give me your hundreds, fifties, and twenties, and do not give me the dye pack." Hicks gave the man the money in her drawer, along with a dye pack. After the robbery, an anonymous person called the grocery store to report a man who appeared to detonate a "cherry bomb" or use red spray paint in the store's parking lot, after which he drove away in a white van. The caller also provided the van's license plate number. The store manager gave the information to FBI Agent Dan Lee, who traced the license plate number and found that it matched a 1993 Mitsubishi registered to petitioner Carlos Wesley of 11555 South Ashland Ave. in Chicago, Illinois.

Agent Lee drove to 11555 South Ashland and found a white van parked in front of the residence. The van's license plate number matched that given by the caller, and it had a reddish stain on its left front panel. Several hours later, petitioner and another man approached the van. Agent Lee and a back-up officer approached the two men, who identified themselves as Carlos

Wesley and his brother. Petitioner allowed the FBI agents to search the van and his bedroom. Inside petitioner's bedroom, agents found a blue checkbook cover with a red stain, which petitioner admitted belonged to him. A later laboratory analysis indicated that the red stains on the van and checkbook cover were from a substance with the same chemical composition as the dye packs used by the TCF bank.

For further identification purposes, Agent Lee created a photo array comprised of photographs of six different African-American men, including one photograph of petitioner. Agent Lee presented unmarked copies of the photo array to bank tellers Butler and Hicks. Both women independently identified petitioner as the man who had robbed the TCF bank.

Petitioner was indicted and went to trial, which resulted in a hung jury. At petitioner's second trial for three counts of bank robbery in June 2003, all three bank tellers testified. Each recounted specific details of the robberies. Butler and Hicks explained how they picked petitioner's photograph from the photo array, and DeBose identified petitioner in the courtroom. The government introduced surveillance videotapes from the grocery store showing the perpetrator of each robbery. The jury returned a verdict of guilty on all three counts.

Petitioner moved for acquittal and a new trial. This court denied both motions and sentenced petitioner to fifty-seven months of imprisonment and three years of supervised release, along with restitution. Petitioner appealed the final judgment and sentence, arguing that the this court abused its discretion in denying his motion for a new trial and erred in treating the sentencing guidelines as mandatory contrary to <u>United States v. Booker</u>, 543 U.S. 220 (2005). The Seventh Circuit affirmed petitioner's conviction and remanded the case to this court to determine whether it would have imposed the same sentence had it known the Sentencing

Guidelines were not mandatory. This court determined it would have imposed the same sentence even if it had known the Guidelines were merely advisory, and the Seventh Circuit affirmed petitioner's sentence.

**DISCUSSION**

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. This relief is available only in limited circumstances, i.e., where an error is jurisdictional or constitutional, or where there has been a "complete miscarriage of justice." Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004); Bischel v. United States, 32 F.3d 259, 263 (7th Cir. 1994) (internal quotations and citations omitted). This court reviews the record and draws all reasonable inferences in favor of the government. United States v. Galati, 230 F.3d 254, 258 (7th Cir. 2000); Messinger v. United States, 872 F.2d 217, 219 (7th Cir. 1989).

Petitioner claims that his defense counsel, Patrick Blegen, was constitutionally ineffective on five grounds. The government argues that petitioner is procedurally barred from bringing such a claim because he did not raise it on direct appeal. The government's assertion is simply wrong and flies in the face of Supreme Court precedent. A petitioner may bring a claim for ineffective assistance of counsel in a § 2255 motion regardless of whether he raised that claim on appeal. Massaro v. United States, 538 U.S. 500, 504 (2003).

To prevail on a claim of ineffective assistance of counsel, petitioner must show that his counsel's conduct "fell below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. 668, 690 (1984). To succeed on a § 2255 petition, petitioner's counsel's errors must have been so serious

4

"as to deprive the petitioner of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993) (quoting Strickland, 466 U.S. at 687). In other words, petitioner "must establish that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Benefiel v. Davis, 357 F.3d 655, 662 (7th Cir. 2004) (quoting Strickland, 466 U.S. at 694). Because the court begins with a strong presumption that counsel's conduct falls within the wide range of acceptable professional assistance, petitioner faces a heavy burden in establishing a winning ineffective assistance of counsel claim. See Strickland, 466 U.S. at 690; United States v. Ruzzano, 247 F.3d 688, 696 (7th Cir. 2001).

Claim I: Photo Array and Identification Statements

Petitioner claims that Mr. Blegen failed to provide effective assistance when he failed to investigate the photo array shown to bank teller Theresa Hicks[2] or move to have it suppressed. Petitioner argues that the photo array was prejudicial because his photo was the only one of six pictures that was cut out and pasted onto the array, giving it the appearance of being outlined. Petitioner also claims that the photo array used at trial was different from the one shown to him by an FBI agent on October 6, 2000. Additionally, petitioner argues that Theresa Hicks did not make a positive identification of him when she viewed the photo array and instead gave a coached statement. According to petitioner, Mr. Blegen had an obligation to investigate these photo arrays and Hicks's related statement, move to suppress the array and Hicks's testimony, or

---

[2]Petitioner also claims that Mr. Blegen should have done investigatory work regarding the photo array shown to bank teller Kilwana Jackson. Jackson, however, did not testify at petitioner's second trial and was not involved in the robberies at issue in the second trial.

bring the array and testimony to the court's attention. Petitioner also argues that Mr. Blegen had an obligation to put into evidence potentially exculpatory FBI reports, which indicated that a bank teller had identified a male other than petitioner when shown a photo array after a robbery in which petitioner was a suspect.

Petitioner's argument is fatally flawed. First, although the two bank tellers, Ms. Jackson and Ms. Hicks, testified that they identified the person who robbed them from a photo array given to them by the FBI agent, the actual photo arrays were placed into evidence through the testimony of the agent. Thus, the jury had the photo arrays to examine and could have seen for themselves any purported discrepancies such as those described by petitioner. The court has also reviewed a copy of the photo array and finds that it does not match petitioner's description. Had the array been as conspicuously prejudicial as petitioner believes, it would have been apparent to petitioner's counsel and to the court, and the issue would have been raised and dealt with prior to or during the trial.

Of greater significance, petitioner's counsel effectively cross-examined both of the tellers, impeaching them at points with inconsistencies in their prior testimony and getting each of them to admit that they had incorrectly identified the robber when they first gave their descriptions to law enforcement agents. Having thus called into question the abilities of these witnesses to recall and identify the person who robbed them, as well as their credibility, it is little wonder that counsel decided to forego examining their selecting petitioner's photograph from the photo array. This is the type of tactical decision to which the court must defer under Strickland, 466 U.S. at 695. A review of the transcript of the second trial reveals that Mr. Blegen and petitioner's other trial counsel, Paul Brayman, did an excellent job in cross-examining these

6

witnesses, and the court will not substitute its judgment for the tactical decisions made by these able lawyers. Accordingly, the court finds that petitioner has failed to demonstrate ineffective decision of counsel in Claim I.[3]

Claim II: Withholding and Suppressing Exculpatory Evidence

Petitioner claims that Mr. Blegen withheld and suppressed exculpatory evidence when he asked petitioner to leave the courtroom during his first trial so that he could talk to the court and the prosecutors about a conversation a juror had potentially overheard. This conversation concerned other robberies in which petitioner was a suspect. According to petitioner, Mr. Blegen was discussing reports of these robberies, which contained potentially exculpatory information. Petitioner claims that Mr. Blegen should have provided him with copies of these reports and presented them at trial.

Petitioner's claim concerns only his first trial, not the trial at which he was convicted. His claim is therefore irrelevant to the assistance he received at his second trial. Consequently, the court finds that Claim II is without merit.

---

[3] Petitioner's other point, that Mr. Blegen should have cross-examined one of the tellers about a misidentification in a different robbery, is without merit. It is doubtful that such evidence would have been admitted had the government objected. More importantly, having effectively impeached the tellers during cross examination, counsel was well within his rights not to seek any further cross-examination or to give the government an opportunity to rehabilitate these witnesses.

Claim III: Failure to Challenge Perjured Testimony

Petitioner claims that FBI Agent Lee testified during direct examination that he recovered a dye-stained checkbook from a filing cabinet in petitioner's bedroom, but did not include any references to the filing cabinet in any reports filed in connection with the search. According to petitioner, he told Mr. Blegen that no filing cabinet existed while Agent Lee was being examined, but Mr. Blegen did not question Agent Lee about the existence of the filing cabinet on cross-examination; in fact, he questioned Agent Lee about the search as if "the file cabinet actually existed." According to petitioner, Mr. Blegen's failure to question Agent Lee about the existence of the filing cabinet or to inform the court that no filing cabinet existed permitted the government to present perjured testimony.

The court first notes that although Agent Lee did not mention the file cabinet in his reports, that exclusion did not prevent him from discussing the file cabinet during testimony and did not, on its own, make his testimony contradictory or cause him to perjure himself. Further, as discussed above, petitioner must demonstrate that counsel's conduct "fell below an objective standard of reasonableness" and was "outside the range of professionally competent assistance." Strickland, 466 U.S. at 690. In the instant case, Mr. Blegen explained to petitioner that whether the checkbook was in a file cabinet or merely in the bedroom was not relevant to his trial strategy. Additionally, Mr. Blegen conducted a thorough cross-examination of Agent Lee concerning the location of the checkbook and the related search of the bedroom. The court therefore concludes that Mr. Blegen's decision not to question Agent Lee about the existence of the file cabinet was objectively reasonable and within the range of professionally competent assistance. Consequently, Claim III is denied.

Claim IV: Waiver of Right to Trial by an Impartial Jury

Petitioner argues that Mr. Blegen provided ineffective assistance when he failed to include defendant in a discussion in chambers concerning the possible impartiality of a juror who was robbed during the trial. Although the prosecutor stated that petitioner had a right to be present during the impaneling of the juror who was robbed and the juror who brought the matter to the court's attention, Mr. Blegen informed petitioner that his presence was not necessary.

Petitioner raised the issue of juror bias in his direct appeal. The Seventh Circuit held that "through his counsel, [petitioner] intentionally relinquished his right to challenge the makeup of the jury based on [the juror's] experience during deliberations." Wesley, 422 F.3d at 521. For that reason, the court of appeals found that there had been no error at the district court level and therefore no error to correct on appeal.

Petitioner now claims that because Mr. Blegen was ineffective in assisting him, he waived his right to challenge the composition of the jury without realizing he had done so. Petitioner argues that had he been present, he would have pressed Mr. Blegen to ask follow-up questions of the potentially biased juror or object to the court's decision, which could have led to a new trial.

Under the "harmless error" standard, the court must analyze if there is a "reasonable doubt that the error complained of contributed to the verdict obtained." Chapman v. California, 386 U.S. 18, 24 (1967). In the instant case, the court questioned the juror who had been robbed during the trial, who said that despite the incident he could be fair and impartial as a juror. Although the court allowed attorneys from both sides to ask questions, it gave the greatest weight to the juror's own response in allowing the juror to remain for deliberations. The court

9

finds that petitioner's presence in chambers for juror questioning would not have changed the court's determination regarding the juror. Moreover, if petitioner had any complaint about not being present during the juror's questioning, he had ample opportunity at the time to raise his concerns, but failed to do so. For these reasons, Mr. Blegen's failure to allow petitioner to participate in the discussion was harmless error, and the court denies Claim IV.

Claim V: Failure to Call Key Witnesses

Petitioner argues that Mr. Blegen was ineffective in his failure to call Earline Wesley and Nancy Wesley, petitioner's sisters, to testify on his behalf. According to petitioner, his sisters would have testified regarding petitioner's character and another brother's drug and alcohol addictions, which caused him to steal from petitioner and other family members.

A lawyer's decision to call or not to call a witness is a strategic decision that is generally not subject to review. Valenzuela v. United States, 261 F.3d 694, 699-700 (7th Cir. 2001); United States v. Balzano, 916 F.2d 1273, 1294 (7th Cir. 1990). In rare cases, an attorney's failure to call certain witnesses can constitute ineffective assistance of counsel. Sullivan v. Fairman, 819 F.2d 1382, 1390 (7th Cir. 1987); Berry v. Gramley, 74 F. Supp. 2d 808, 816-17 (N.D. Ill. 1999). "Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been, and prove that this witness's testimony would have produced a different result." Patel v. United States, 19 F.3d 1231, 1237 (7th Cir. 1994) (citations omitted).

Petitioner claims that his sisters would have testified as character witnesses. He makes no assertion, though, that their testimony would have changed the decision of the jury in any

way. Further, he notes that his sister had become reluctant to testify after being approached by an FBI agent. The fact that his sister was a reluctant witness only emphasizes that Mr. Blegen's decision not to call petitioner's sisters as witnesses was a strategic one and was not detrimental to the outcome of the case. Petitioner fails to show that Mr. Blegen's decisions were unreasonable, and the court finds that his performance in this aspect was not ineffective. Claim V is therefore denied.

Claim VI: Failure to Incorporate Petitioner's Suggestions

Petitioner claims that during trial, he presented Mr. Blegen with a list of questions to ask witnesses, to which Mr. Blegen responded, "I don't usually listen to my clients during trial regarding what questions to ask or evidence to put in." Petitioner asserts that Mr. Blegen's failure to incorporate his suggested questions violated Mr. Blegen's duty under Strickland to consult with petitioner on important decisions and to keep petitioner informed of important developments in the prosecution.

Petitioner is correct that Mr. Blegen has duties to his client under Strickland. These duties, however, do not include deferring to his client on matters of strategy and tactics. This "court must defer to counsel's tactical decisions" in determining whether counsel acted reasonably. Strickland, 466 U.S. at 695. Petitioner makes no showing that Mr. Blegen acted unreasonably or unprofessionally in failing to take petitioner's suggestions into consideration, and he does not demonstrate that such failure altered the outcome of the trial. For that reason, the court denies Claim VI.

## **CONCLUSION**

For the reasons stated above, the court denies petitioner's § 2255 petition to vacate his conviction and sentence.


**ENTER:** April 18, 2007

_____
**Robert W. Gettleman
United States District Judge**